❏ Original    ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information associated with Facebook account<br>Raymond Henry that is stored at premises<br>controlled by Meta Platforms, Inc. | )<br>)<br>)    Case No.    22-1851M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____December 7, 2022_____ *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Nancy Joseph, United States Magistrate Judge___ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    ___11/23/22 @ 8:20 a.m.___

*Judge's signature*

City and state:    ___Milwaukee, Wisconsin___        ___Nancy Joseph, United States Magistrate Judge___
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A - MATTER NO. 2022R00458**

**Property to Be Searched**

This warrant applies to information associated with the following Facebook account, that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California:

| USER | FACEBOOK IDENTIFICATION (UID) | FACEBOOK USERNAME | FACEBOOK URL |
|------|-------------------------------|-------------------|--------------|
| Raymond HENRY | 100001779042064 | Raymond Henry | https://www.facebook.com/raymond.henry.965 |

# ATTACHMENT B - MATTER NO. 2022R00458

## Particular Things to be Seized

**I.** **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including for user IDs: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from July 1, 2020 to December 31, 2020;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them July 1, 2020 to December 31, 2020, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)      All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f)      All other records and contents of communications and messages made or received by the user July 1, 2020 to December 31, 2020, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)      All "check ins" and other location information;

(h)      All IP logs, including all records of the IP addresses that logged into the account;

(i)      All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)      All information about the Facebook pages that the account is or was a "fan" of;

(k)      All past and present lists of friends created by the account;

(l)      All records of Facebook searches performed by the account July 1, 2020 to December 31, 2020;

(m)      All information about the user's access and use of Facebook Marketplace;

(n)      The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r)     All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 DAYS of issuance of this warrant.

3

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 844(i) (arson affecting interstate commerce), Section 844(n) (conspiracy to commit arson), and 371 (conspiracy to violate the laws of the United States) involving RAYMOND O. HENRY (DOB: 07/19/1996) and others known and unknown since July 1, 2020, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Information about the protests, riots, and civil unrest in the Kenosha, Wisconsin area occurring in August 2020;

(b) Any information about Raymond Henry's location or whereabouts on or about August 25, 2020;

(c) Any information about accelerants or ignitable liquids (such as gasoline, kerosene, or other petroleum distillates), glass bottles, ignition devices (such as an improvised wick or towel), heat sources, and ignition sources (such as a lighter or matches);

(d) Any information about making, receiving, possessing, or using an improvised incendiary bomb or destructive device, commonly known as a Molotov cocktail;

(e) Any information about the appearance, clothing, and identity of Raymond Henry and others on August 25, 2020;

(f) Any information related to motive, intent, or knowledge of the violations described above;

(g) Any information related to the concealment or destruction of evidence of the violations described above;

4

(h) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between the suspect and others related to the relevant offense conduct in the above-listed crimes;

(i) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(j) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(k) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(l) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the above-listed crimes, including records that help reveal their whereabouts.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>information associated with Facebook account<br>Raymond Henry that is stored at premises controlled<br>by Meta Platforms, Inc. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    22-1851M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 844(i), 844(n), and 371 | arson affecting interstate commerce, conspiracy to commit arson, and conspiracy to violate the laws of the United States |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Digitally signed by ALEXIS KRUSIC (Affiliate)*
*DN: c=US, o=U.S. Government, ou=Dept of Justice, ou=ATF,*
*0.9.2342.19200300.100.1.1=1500100396277*
*6, cn=ALEXIS KRUSIC (Affiliate)*
*Date: 2022.11.22 11:04:30 -06'00'*

_____
*Applicant's signature*

Alexis Krusic, Task Force Officer (ATF)
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: ___11/23/2022___

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Nancy Joseph, United States Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Alexis Krusic, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California.   The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.      I am a Task Force Officer of the United States Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee I Field Office and have been since March 2020. I am also a Detective with the Criminal Investigations Division of the Milwaukee County Sheriff's Office (MCSO) and have been employed with MCSO since January 2016. My duties with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes. My duties with MCSO include investigating state violations of all criminal offenses.

3.      I have completed approximately 920 hours/6 months of training at the Milwaukee County Sheriff's Office Training Academy through the Wisconsin Law Enforcement Standards Bureau. That training included various legal courses related to Constitutional Law as well as search and seizure authority.  Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as: interviewing, surveillance, and evidence

collection. I have experience with investigations into commercial arsons and criminal damage to property.

4.        I have been part of MCSO's Bomb Squad Unit since 2019 and have taken part in multiple explosive investigations and disposal of devices. I completed the Federal Bureau of Investigation's Hazardous Devices School, a five-week certification program, to become a certified bomb technician.

5.        I received my bachelor's degree from the University of Wisconsin-Milwaukee in Criminal Justice with a specialty in Crime Analysis in 2015.

6.        As a Task Force Officer, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of individuals and the seizure of illegal drugs and weapons. As a firearms investigator, I have interviewed individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

7.        I have participated in firearm trafficking and arson investigations that involved the search of social media, and the seizure of computers, cellular phones, cameras, and other digital storage devices. The subsequent analysis of electronic data stored within these accounts or computers, cellular phones, cameras, and other digital storage devices, on many occasions, has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement, including identity, intent, motive, manner, and means.

8.        I have also conducted criminal investigations where records and information associated with a target or subject's social media profiles have provided evidence of the crimes

2

under investigation and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have used records and information from social media platforms to obtain public and private communications about criminal activity, incriminating photographs, information about a target's location or whereabouts, and information about the relationship amongst targets, subjects, and witnesses. I know through experience that many social media users often use social media platforms as a primary means of communication.

9. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

10. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

11. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 844(i) (arson affecting interstate commerce), Section 844(n) (conspiracy to commit arson), and 371 (conspiracy to violate the laws of the United States) have been committed by RAYMOND O. HENRY (DOB: 07/19/1996) and other unknown subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## **PROBABLE CAUSE**

12. On August 23, 2020, Jacob Blake was shot multiple times by officers of the Kenosha Police Department. That incident triggered both non-violent protests and violent

3

rioting, including numerous arsons throughout the City of Kenosha. The unrest and violence grew so dangerous that the Wisconsin National Guard eventually deployed over 1,000 individuals to keep the peace. The United States also marshaled its resources to investigate crimes in the aftermath.

13.     ATF's National Response Team (NRT) and the Milwaukee Field Office, in partnership with the Kenosha Police Department, Kenosha Fire Department, Kenosha Sheriff's Office, Drug Enforcement Administration, Wisconsin Department of Justice's Division of Criminal Investigation, and the United States Attorney's Office have focused their efforts on identifying the persons responsible for twenty building arsons, seven vehicle arsons, and other related crimes that occurred in Kenosha between Sunday, August 23, 2020 and Tuesday, August 25, 2020. Those investigators processed scenes, collected video evidence, and identified potential witnesses, subjects, and targets. The instant warrant application is made as a part of this same investigative effort.

14.     In conjunction with other federal, state, and local law enforcement officers, I am assisting with an investigation into an arson at the Kenosha Public Library (Simmons Library), located at 711 59th Place, Kenosha, Wisconsin, on August 25, 2020. As a part of the investigation into this arson at the Kenosha Public Library, law enforcement collected evidence from the scene and retrieved follow-up documents pertaining to this arson.

15.     On August 27, 2020, three ATF Special Agent Certified Fire Investigators (SACFI)/Certified Explosive Specialists (CES), along with a team of Wisconsin Department of Justice Division of Criminal Investigations (DCI) Special Agents and an ATF Chemist responded to the Kenosha Public Library and investigated the fire scene.

4

16.     The Kenosha Public Library's exterior consisted of stone blocks with an assortment of windows above and below the ground on each of the four sides of the structure. Investigators were advised prior to their arrival that windows had been broken around the structure and a window had fire damage in a basement window well.

17.     Investigators observed a broken window and fire damage in the northeast basement window well. No other sides of the library exhibited fire damage or vandalism.

18.     Investigators observed that the center window of the basement window well was broken and exhibited evidence of fire damage, including soot staining on the exterior glass and thermal damage to the wood window frame.

19.     Inside of the window well where the fire damage existed, investigators observed two concrete rocks, a fire-damaged cloth material, an undamaged white cloth material, a 32-ounce container of Charcoal Chef lighter fluid that contained a liquid with an odor consistent with lighter fluid, and a Gatorade bottle that contained an unknown liquid.

20.     ATF's CFIs concluded that this arson was caused by the window being broken with the concrete rocks and an unknown person or persons used an open flame in conjunction with the lighter fluid and a cloth rag material to cause fire damage to the library.

21.     The items mentioned above were collected as evidence and sent to the ATF National Laboratory for DNA and latent print examination:

    a.  Exhibit 0001: liquid sample from Charcoal Chef lighter fluid container on gauze

    b.  Exhibit 0002: empty container of Charcoal Chef lighter fluid

    c.  Exhibit 0003: white cloth material

    d.  Exhibit 0004: burnt cloth material

    e.  Exhibit 0005: rock located below broken fire damaged window

f. Exhibit 0006: larger rock located below broken fire damaged window

g. Exhibit 0007: Gatorade bottle and cap that contained an unknown liquid

h. Exhibit 0008: Liquid sample from Gatorade bottle.

22.    Results from the ATF National Laboratory were received on October 5, 2022 for the items mentioned above.

23.    The lab results indicated that Exhibit 0008—liquid sample from the Gatorade bottle—contained a clear, colorless liquid that contained a medium petroleum distillate (MPD), which is classified as "an ignitable fluid with examples being charcoal lighter fluid, some paint thinners, and some mineral spirits."

24.    The lab results also indicated that the DNA obtained from the swabs of Exhibit 0007—the Gatorade bottle and cap containing an unknown liquid—of the 'remaining area of Gatorade bottle including label and possible ridge detail/smudging' was entered into the Combined DNA Index System (CODIS).

25.    On October 7, 2022, I was notified that the DNA profile collected from Exhibit 0007 had a profile hit to one subject—RAYMOND O. HENRY (DOB: 07/19/1996).

26.    I learned that HENRY had, in fact, been on scene at the Kenosha Public Library during the arson on August 25, 2020, and was arrested by the Kenosha Police Department for disorderly conduct while armed and obstructing or resisting an officer. He was charged in Kenosha County Case Number 2020CM001442 and later convicted of disorderly conduct, in violation of Wisconsin Statute 947.01(1), and failure to comply with an emergency management order of the state or local government, in violation of Wisconsin Statute 323.28.

27.    Prior to HENRY's arrest on August 25, 2020 at approximately 12:00 a.m., a Kenosha Police Department (KPD) Captain, who was driving the area, initiated a call to their

dispatch and asked for additional squads to the Simmons Library for a group of individuals who he believed may have been attempting to start the library on fire. The KPD Captain relayed that he saw a group of individuals and one was holding a plastic container.

28.     Two Kenosha Police Department officers arrived in an undercover vehicle but wearing fully identifiable "POLICE" vests for safety. The officers observed several persons along the northeast side of the building, smelled the odor smoke, but did not see an actual flame from where they were located. As officers approached the group of individuals on the northeast side of the library, where the fire was determined to have originated, the officers observed HENRY with a firearm in his right hand wearing a black tactical vest. When the Kenosha Police Department officers approached the group, they all ran away from the building in different directions and ignored the officer's commands of "Police, Stop!"

29.     After a foot chase, Kenosha Police Department officers apprehended HENRY and David E. Robinson (DOB: XX/XX/1984). Robinson was arrested for disorderly conduct and resisting or obstructing an Officer. Robinson lived in Illinois at the time and was not interviewed. Upon HENRY's arrest, police recovered a 9mm firearm from HENRY that was holstered on his black tactical vest. Robinson and HENRY were arrested at 12:07 a.m.

30.     After HENRY's arrest, the same Kenosha officers returned to the Kenosha Public Library where they initially saw the group of individuals on the northeast side of the building and smelled gasoline or another accelerant and observed that there was something recently burning on the north side of the library.

31.     I contacted the Federal Bureau of Investigation (FBI) who conducted an interview with HENRY on August 29, 2020. HENRY was arrested August 25, 2020. After waiving his rights, HENRY stated that he was part of a group from Green Bay, Wisconsin, which was

7

comprised of 30 people that protested with Black Lives Matter (BLM), All Lives Matter (ALM), and sex trafficking. HENRY was invited to various events via Facebook by different individuals. HENRY stated that his Facebook name was "RAYMOND HENRY" and found out about the Kenosha Civil Unrest event via a Facebook invite. HENRY met with the aforementioned group at a park-and-ride off the highway in Green Bay; and, an unknown person gave him keys to their car, which he drove from Green Bay to Kenosha. HENRY said that he stayed at the La Quinta in Kenosha, Wisconsin. HENRY stated that he knew an individual in the group as 'ABBIE,' who invited him to another protest in Appleton, Wisconsin, which was set to occur on August 30, 2020 and August 31, 2020. HENRY said that 'ABBIE' was not in the group of people with which he was arrested in at the library.

32.     I located the publicly-visible Facebook page belonging to "RAYMOND HENRY." I compared the publicly-visible Facebook profile photograph to HENRY's arrest booking photograph and HENRY's Wisconsin driver's license photograph and confirmed that the Facebook page belongs to HENRY. I located a photo that was posted on HENRY's Facebook page from August 27, 2020, with HENRY walking with a group of individuals on a public street with the subject next to him speaking into a megaphone (Figure 1). HENRY's Facebook page also displayed an image posted October 2, 2020, of HENRY walking in a street with vehicles around him with a rifle slung across his chest (Figure 2).

8



**Figure 1**



**Figure 2**

33.    I identified that the Facebook username "Raymond Henry" with user Raymond HENRY has the Facebook Identification (UID) 100001779042064, which I located using the page source by right clicking and finding the 'profile_id' and verifying the UID with Facebook, and Facebook URL https://www.facebook.com/raymond.henry.965.

## BACKGROUND CONCERNING FACEBOOK[1]

34.    Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

35.    Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

36.    Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can

_____

[1] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

37.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

38.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

39.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be

tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

40. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

41. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

42. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

43. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

44. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

45. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

46.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

47.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

48.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

49.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

50.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element

or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

51. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and

their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

52.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

53.     Based on the foregoing, I request that the Court issue the proposed search warrant.

54.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

55.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**ATTACHMENT A - MATTER NO. 2022R00458**

**Property to Be Searched**

This warrant applies to information associated with the following Facebook account, that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California:

| USER | FACEBOOK IDENTIFICATION (UID) | FACEBOOK USERNAME | FACEBOOK URL |
|---|---|---|---|
| Raymond HENRY | 100001779042064 | Raymond Henry | https://www.facebook.com/raymond.henry.965 |

Case 2:22-mj-01851-NJ   Filed 11/23/22   Page 25 of 30   Document 1

## ATTACHMENT B - MATTER NO. 2022R00458

### Particular Things to be Seized

**I.  Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)  All contact and personal identifying information, including for user IDs: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)  All activity logs for the account and all other documents showing the user's posts and other Facebook activities from July 1, 2020 to December 31, 2020;

(c)  All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them July 1, 2020 to December 31, 2020, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)  All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user July 1, 2020 to December 31, 2020, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account July 1, 2020 to December 31, 2020;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

2

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r)     All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 DAYS of issuance of this warrant.

3

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 844(i) (arson affecting interstate commerce), Section 844(n) (conspiracy to commit arson), and 371 (conspiracy to violate the laws of the United States) involving RAYMOND O. HENRY (DOB: 07/19/1996) and others known and unknown since July 1, 2020, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)  Information about the protests, riots, and civil unrest in the Kenosha, Wisconsin area occurring in August 2020;

(b)  Any information about Raymond Henry's location or whereabouts on or about August 25, 2020;

(c)  Any information about accelerants or ignitable liquids (such as gasoline, kerosene, or other petroleum distillates), glass bottles, ignition devices (such as an improvised wick or towel), heat sources, and ignition sources (such as a lighter or matches);

(d)  Any information about making, receiving, possessing, or using an improvised incendiary bomb or destructive device, commonly known as a Molotov cocktail;

(e)  Any information about the appearance, clothing, and identity of Raymond Henry and others on August 25, 2020;

(f)  Any information related to motive, intent, or knowledge of the violations described above;

(g)  Any information related to the concealment or destruction of evidence of the violations described above;

4

(h)     The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between the suspect and others related to the relevant offense conduct in the above-listed crimes;

(i)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(j)     Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(k)     The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(l)     The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the above-listed crimes, including records that help reveal their whereabouts.